UNITED STATES BANKRUPTCY COURT                    <u>FOR PUBLICATION</u>
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re

        Steven Joseph DeWolfe                     Case No.  12-12211 K

                  Debtor
-------------------------------------------------------------------


## <u>OPINION AND ORDER</u>

The question before the Court is one of first impression in New York.[1] On its

face it seems clear-cut.  Does the Debtor's matrimonial counsel have a  "charging lien" that is

superior to the rights of the Chapter 7 estate as to a fund  that was set aside for the Debtor in

the matrimonial court "as and for his interest in" the marital home, but where the home was

not to be sold?  (In the divorce proceeding the Debtor's lawyers ("the firm") obtained a certain

division of property that yielded a fund of $ 22,175.00 for that purpose.  (The divorce was pre-

petition, but the fund arrived post-petition.) )

Specifically, the former wife was to refinance the marital home and  pay the

money to the Debtor.   She did refinance the residence with the cooperation of the Chapter 7

Trustee, and paid the money to him (the Trustee).  The firm asks that that fund be turned over

to it.

There are many cases under New York Judiciary Law § 475 making it clear that

there can be no charging lien upon the proceeds of a property interest that the client already

had before his or her lawyer expended time and energy either in preserving that interest, or

---

[1]One published case touched upon it, but see footnote 2 below.

converting it to cash by means of a <u>sale</u>.  To illustrate the  proposition that at least when the

marital residence is the only asset being distributed under the settlement agreement or judicial

decree, there can be no charging lien upon the proceeds after the <u>sale</u> of the marital residence,

the Trustee cites   *Golden v. Whittemore*, 125 App. Div. 2nd 942, and *Theroux v. Theroux*, 145

App. Div. 2d 625.  (For the broader proposition that an attorney who merely defends or

protects his client's interest in property without obtaining an "affirmative recovery" is not

entitled to a lien on the property or interest that his client retains, he cites *Rosenman and Colin*

*v. Richard*, 850 F.2d 57, and *Moody v. Sororkina*, 50 App. Div. 3d 1522.)

   The firm properly acknowledges these authorities, but also points out the fact

that child custody and support provisions were heavily negotiated and resolved in this case,

and that many assets other than the house were addressed in the agreement that led to the

eventual Decree of divorce.  Pension funds, jewelry, furniture, cars, and other things.  None

were to be sold, however, and so no dollar value was ascribed to any of those assets by the

Settlement Agreement or the Decree.  The marital home was the exception.   Only as to that

asset did the matrimonial court calculate a dollar value for the Debtor's interest.

   The firm has ably argued that in complicated matrimonial cases the conversion

of a pre-existing interest in real estate or some other asset might constitute a "new fund" upon

which a charging lien might attach,[2] but the Court finds that this is not such a case.   Despite

---

[2]The case of *Noble v. Noble* , 2011 N.Y. Misc. Lexis 1456 apparently was misread by the court in the case of *J.K.C. v. T.W.C.* 2013 WL 791299 (N.Y. Sup.).  However, the *Noble* case shows how various "debts" and "credits" in a complicated matrimonial case might create a "new fund" to which a charging lien might apply.  In *J.K.C.* the court stated "the wife, through the transfer and sale of her marital interest in the <u>marital</u> home, received cash proceeds,

the fact that many other things were dealt with in the separation agreement and Decree, and

despite the fact that some of those covenants were undertaken "in consideration for the

transfers recited throughout this agreement," the present case is not materially different from

far less complicated cases that involved only the sale of the marital home, with payment to

each spouse of their respective distributive shares. The Debtor and his former wife were

keeping what each had in his or her possession (autos, furniture, jewelry, etc.) or in his or her

own name (bank accounts, debts, retirement funds, etc.).

      The Court has no doubt that: (1) often such a simple property division is

accomplished only because matrimonial counsel applied great skill and expended much time in

resolving the core issues of child custody, child support, and spousal maintenance, and (2) the

Debtor's matrimonial counsel well-earned its fee (which is not yet paid in full). As to point

"(1)," it seems to the Court that the more "simple" that matrimonial counsel might make a

settlement agreement or Decree, the less likely it is that they could get paid for that skill and

work by means of a charging lien. Clearly, support and maintenance (and often custody) are

based on "financial means," and often such means are based upon the distribution of property.

(And vice-versa, in the sense that relative wealth might possibly inform a court's decision as to

custody and support, in a rare case.)

---

even though she was only converting her marital share into cash." [Emphasis added] That is incorrect . First, there
was no sale or "cash proceeds." Second, the $41,,500 "new fund" described by the court was a quantification of the
husband's interest in the marital residence which he was deeding to the wife. Her interest was never converted into
cash. The *Noble* case did involve complicated distributive provisions that were to be "netted out" in an ultimate
payment from the husband to the wife. See also *Lustig v. Zahuranec*, 2006 U.S. Dist. Lexis 3894, discussed below.

The matrimonial Bar (to the great benefit of its clients, and to its own honor and that of all lawyers) sit their clients down and say "The kids come first. Let's do right by them and adjust division of property afterwards, as best as we can." The Court assumes (from the arguments of the firm's counsel here) that such was the case in the resolution of the Debtor's divorce. The problem for the firm is that such efforts, having been successful, resulted in an agreement and Decree that seem "simple." The Court knows that reaching the resolution in this case was not simple.

If the distributive provisions had quantified the respective monetary interest of each asset that was to be "hers" or "his," and to have calculated each party's distributive rights in the other's pension fund, or car or other asset, and to "net-out" the debits and credits, then a court later could determine whether a "new fund" was created - - a fund subject to a charging lien. It cannot be done here or in so many other matrimonial resolutions that this Court has seen in bankruptcy cases.

As to point "(2)," the firm surely earned its fee, but the dispute here is not entirely between the Debtor and the firm.[3] It is also between the firm and the Debtor's other creditors, as represented by the Trustee. Thus, "equity" is not the touchstone for decision. Rather, bankruptcy jurisprudence requires that unsecured creditors (which now will include the

---

[3]To some extent it eventually could be. The Trustee has paid $11,325.00 of the fund to the Debtor pursuant to his claim of exemption under the federal "wild card" provision, 11 U.S.C. § 522(d)(5). So far, the firm has not demanded that the Trustee turn that sum over to it. Also, the Debtor's former wife held a priority, non-dischargeable claim for past due support ($586.25) that either has been paid by the Trustee or will be paid by stipulation among her, the firm, and the Trustee.

firm) enjoy a distribution from estate property that is not subject to a valid and enforceable lien.

The Court commends counsel on both sides for their diligent and informative advocacy. The Court is left with the firm impression that what matrimonial counsel does in difficult cases that end up looking "simple" is more "art" than "engineering." (Perhaps these more complicated times of various retirement devices and ever-evolving standards for resolution of the critical matter of child custody and support, suggest a need for a change in the statute establishing "charging liens" in matrimonial cases.)

Finally, the firm has cited the case of *Lustig v. Zahuranec,* 2006 U.S. Dist. Lexis 3894 in its favor. If that case were in point, it would bind this Court,[4] but it is not in point. The real estate in question in that case had never been owned by that Chapter 7 debtor. Her attorney's effort toward obtaining a charging lien was denied because there was no instrument or judgment by which that debtor/client could have claimed an ownership interest in a certain sum of money generated from that real estate, money which her lawyer held. Under the facts and holding of that case, there can be no doubt that her attorney would have had a charging lien if there had been an appropriate instrument or judgment awarding that debtor/client an interest in the property that she did not own or in the fund her attorney held. (Her husband solely owned the property.) Here we simply talk about the conversion of a Chapter 7 debtor's interest in the marital residence into cash. The firm has cited no case sufficient to negate the

---

[4]See *F.C.C. National Bank v. Reid*, 237, B.R.577 (Bankr. W.D.N.Y., 1999).

weight of authority argued by the Trustee.

Consequently, there is no charging lien, and the firm's motion must be denied.

SO ORDERED.

Dated:          Buffalo, New York
                June 19, 2013

                                              s/Michael J. Kaplan
                                    _____
                                              U.S.B.J.